William H. Limerick v. Commissioner.
William H. Limerick v. Commissioner
Docket No. 21318.
United States Tax Court
1950 Tax Ct. Memo LEXIS 181; 9 T.C.M. (CCH) 465; T.C.M. (RIA) 50144; June 8, 1950
E. T. Simpson, Esq., c/o Buckley & Danzansky, 1406 G St., N.W., Washington 5, D.C., for the petitioner. George J. LeBlanc, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent has determined deficiencies of $1,891.04 and $3,362.22 in the petitioner's income tax for 1945 and 1946, respectively. Issues presented by the pleadings are the correctness of the respondent's action: (1) In disallowing a deduction by the petitioner for 1945 of $1,010.50 taken as business expenses and allowing in lieu thereof a deduction of $590 as contributions; and disallowing a deduction by the petitioner for 1946 of $1,517.84 taken as business expenses and allowing in lieu thereof a deduction of $875 as contributions; (2) in disallowing deductions *182 of $1,703.06 and $3,610.28 for 1945 and 1946, respectively, taken as expenses incurred by the petitioner in entertaining customers; (3) in not allowing deductions of $418.41 and $354.57 as losses sustained in 1945 and 1946, respectively; (4) in disallowing for 1945 a deduction of $147.44 representing rental of hangar space for the petitioner's airplane; and (5) in disallowing a deduction of $1,740.87 taken for 1946 as cost of repairs and maintenance of equipment. Findings of Fact General The petitioner, a resident of Washington, D.C., filed his 1945 and 1946 income tax returns with the collector for the district of Maryland. Since 1932 the petitioner has owned and operated an automobile service station at 4430 Benning Road, N.E. in Washington where he sold at retail gasoline, oil, grease, tires, tubes, batteries, accessories, and the customary lubrication and washing services. Prior to opening his own service station at the above address, the petitioner since about 1925 had been the employee-manager of a like station situated on the property adjoining his present location. He became well acquainted with the regular customers there and when he opened his own station many began *183 patronizing him and have continued to do so. He has been an active participant in the civic affairs of the community and has also been an active member of about 18 or 20 fraternal, civic, and businessmen's organizations. Among such organizations were the Seat Pleasant Lions Club, The Northeast Businessmen's Association, the Washington Board of Trade, Almas Temple of A.A.O.N.M.S., and the Prince George's County Fish and Game Club. During the taxable years here involved the petitioner was an official of the Lions Club and also a stockholder and director of the Seat Pleasant Bank and the Seat Pleasant Building and Loan Association. The petitioner serves about 4,000 to 5,000 regular customers in the course of a year. He services a fairly substantial number of cars per day, very few of which are transients. Not more than 20 of the petitioner's customers make total annual purchases of $1,000 or more. The petitioner's 1945 income tax return disclosed total receipts from his service station business of $155,995.72, a net profit of $9,415.11, and the receipt of a bonus of $6,363.02 from the American Oil Company for the sale of the products of that company exclusively. Petitioner's 1946 *184 return disclosed total receipts from his service station business of $213,415.56, a net profit of $7,746.52, and the receipt of a bonus of $11,429.04 from the American Oil Company for the sale of its products exclusively. The reduction in the ratio of net profit to sales in 1946 from that realized in 1945 was due to the fact that in 1946 more gasoline, upon which the profit margin was smaller was available and a greater proportion of the gasoline sold was such cheaper gasoline. Gasoline rationing was in effect for the greater part of 1945 and that, in part, accounts for the increase in the volume of sales in 1946 over the sales in 1945. Issue (1) Facts as to donations deducted as business expenses. In his returns for 1945 and 1946 the petitioner deducted as business expenses the amounts of $1,010.50 and $1,517.84, respectively. Of the deductions thus taken the respondent disallowed the following items and amounts: 1945
1946
Almas Temple: Crippled Children and Charity
Tickets
$142.90
$ 47.40
Lions Club: Turkeys for the poor
227.60
356.94
Solomons Island Charity
100.00
Charity Tickets
50.00
Charity Activity
25.00
Welfare Entertainment
30.00
Merrick Boys Club:
25.00
25.00
Upper Marlboro High School
25.00
8.50
$420.50
$642.84
*185 The payments to Almas Temple of $142.90 and $47.40 in 1945 and 1946 represented the purchase of admission tickets to the Annual Shrine Circus. The tickets were turned back by petitioner to Almas Temple for distribution to the Crippled Children's Society in Washington, D.C., so that they might be used for the attendance of crippled children at the circus. During the taxable years involved herein the petitioner was active in the Seat Pleasant Lions Club, an organization of business and professional men who live or conduct their businesses within a stated geographical boundary. The club is a dinner club which usually meets twice a month. The petitioner was president of the club in 1945 and held another office in 1946. One of the functions of the Lions Club is to encourage business relationships between its members. As a general rule not more than two members of a given club will be engaged in the same line of endeavor and during the taxable years involved herein the petitioner was the only member of the Seat Pleasant Lions Club who operated an automobile service station. The club during 1945 and 1946 had about 60 members, all of whom were known to the petitioner and about 90 per cent *186 of whom patronized the petitioner's service station. Part of the activities of the Seat Pleasant Lions Club is the furnishing of aid to the blind, examination of the eyesight of school children and the furnishing of glasses to children who need them and are unable to buy them. Another of the activities of the club is the distribution at Christmas time of baskets to needy families whose names were received from churches and welfare organizations situated in the Seat Pleasant and Capitol Heights sections of Washington. The funds for financing such activities are obtained as donations by members of the club and from the net proceeds of social affairs given by the club. In 1945 after all the other members had made their contributions for Christmas baskets sufficient funds were lacking for providing a turkey for all the families on the club's list. The petitioner knew all the families for which turkeys had not been provided and contributed $227.60, the amount required to furnish turkeys for them. A similar insufficiency of funds existed in 1946 and the petitioner contributed $356.94 to provide the required sum. The distribution of baskets was made in the name of the club. The club did *187 not disclose to outsiders the names of the members who did or did not contribute. The item of Charity Tickets in the amount of $50 for 1946 represents the amount paid by petitioner for 15 tickets to the club's annual dinner for the benefit of the blind fund. All of the tickets except the one used by the petitioner were given by him to his customers. The item of Welfare Entertainment in the amount of $30 represented an amount contributed by the petitioner toward the purchase by the club of an eye-testing machine which was used in the schools located in the area of the club. The petitioner contributed $25 in each of the years 1945 and 1946 to Merrick Boys Club, a Catholic organization operated for the benefit of underprivileged boys. Two members of the board of directors of that organization had been customers of the petitioner for many years. In 1945 and 1946, the petitioner paid $25 and $8.50, respectively, to the Upper Marlboro High School for an advertisement of his service station in the school's yearbook for the respective years. The purpose of the items, Solomons Island Charity $100 and Charity Activity $25 for 1946 was not explained. Issue (1) Opinion. The petitioner *188 now concedes the non-deductibility of the $100 designated Solomons Island Charity and $25 described as Charity Activity. Similarly, the respondent concedes that the petitioner is entitled to deductions in both 1945 and 1946 for the payments designated Merrick Boys Club and Upper Marlboro High School. The deductions claimed covering the amounts expended for tickets to the Shrine Circus are allowable under section 23 (o) of the Internal Revenue Code. Almas Temple is not an organization of the character described in section 23 (o) and it is not claimed by the petitioner that it is. The gift of the tickets, however, was not made to Almas Temple but by petitioner through Almas Temple to the Crippled Children's Society for the District of Columbia and the amounts expended for such tickets are accordingly deductible. The remaining items in the group are the items labeled "Turkeys for the poor", "Charity Tickets" and "Welfare Entertainment." These items represent amounts expended to or through the Seat Pleasant Lions Club. Rather obviously the Seat Pleasant Lions Club is not an organization covered by section 23 (o) of the code. Accordingly, the amounts in question *189 are not deductible under that section of the statute and even if the items described as "Turkeys for the poor" were regarded as charitable contributions it might well be argued that they represented direct personal charities on the part of the petitioner, the petitioner having testified that he knew all of the families for which funds were to provide turkeys, and for that reason are not within the provisions of section 23 (o). The respondent in his regulations, however, has provided as a part of section 29.23 (o)-1 as follows: "A donation made by an individual to an organization other than one referred to in section 23 (o) which presents a direct relationship to its business and is made with a reasonable expectation of a financial return commensurate with the amount of the donation may constitute an allowable deduction as a business expense." While the record is not satisfactory we have concluded that the evidence on this point does preponderate slightly in favor of petitioner and are applying the regulation quoted and allowing as business expenses the amounts contributed to the turkey fund. The Seat Pleasant Lions Club was a club composed of businessmen in the Seat Pleasant area *190 and its activities in the community were rather well publicized. Also the petitioner was apparently not a man who would allow such community activities on his part nor the fact that he was the proprietor of Limerick's Service Station to go unnoticed. On that basis we have concluded that petitioner made the contributions to the turkey fund with the expectation of financial return commensurate with the amounts donated. The $50 labeled "Charity Tickets" was an amount expended for tickets to the annual dinner of the Seat Pleasant Lions Club and distributed to customers of petitioner's service station. While the purchase of the tickets finds no basis in the statute or the above quoted regulation for allowance of the deduction claimed it does appear in the circumstances here shown that their distribution to customers at the filling station may be classified as entertainment of customers in the course of operating the business and on that basis the deduction is allowed. The item of $30 labeled "Welfare Entertainment" was an amount contributed to the Lions Club by petitioner toward the purchase of an eye-testing machine for use in the public schools located in the club area. The deduction *191 of that item is allowed for the reasons heretofore expressed in connection with the "Turkeys for the poor" item. Issue (2) Facts as to deductions taken for entertainment for retaining and gaining customers. In his returns for 1945 and 1946 the petitioner deducted as business expenses the amounts of $1,703.06 and $3,610.28, respectively, as expenses incurred in entertainment for retaining and gaining customers. The respondent disallowed the deductions, which were composed of the following items and amounts: 1945
1946
Almas Temple - Dinners
$ 204.00
$ 370.00
Northeast Businessmen's As-
sociation - Dinners
125.00
Washington Board of Trade
- Dinner
120.00
Liquor for Christmas
Presents
446.22
578.00
Flowers
51.00
346.03
Christmas Presents
Seat Pleasant Bank Em-
ployees
16.80
28.75
Seat Pleasant Building and
Loan Association Em-
ployees
32.50
Field and Stream Magazine
10.00
Entertainment of Employees
130.00
Christmas Cards for Cus-
tomers
95.04
Trip to New York Sport
Show
135.00
Hunting Trips
Ontario, Canada
750.00
1,475.00
New Brunswick, Canada
400.00
$1,703.06
$3,610.28
During 1945 the petitioner had *192 approximately 20 of his customers as his guests at the annual "Potentate's Dinner" given by Almas Temple. In 1946 he had approximately 30 of his customers as his guests on a similar occasion. Some who were guests in 1945 were not guests in 1946. The cost to the petitioner for the occasions was $204 in 1945 and $370 in 1946. On two occasions in 1946 the petitioner had 10 of his customers as guests at dinners given by the Northeast Businessmen's Association at a total cost of $125. During 1946 the petitioner had 12 of his customers as guests at the annual dinner of the Washington Board of Trade at a cost of $120. Some of the guests on this occasion had also been guests of the petitioner at the Potentate's dinner and the Northeast Businessmen's Association dinners. In selecting customers as his guests on the foregoing occasions the petitioner selected them from among those who gave him large amounts of business. The petitioner spent $446.22 in 1945 and $578 in 1946 for bottled liquor in pint and fifth sizes. The bottles were wrapped and given to certain of the petitioner's customers as Christmas presents, with delivery being made at the petitioner's service station. The petitioner *193 estimated the number of such gifts to be between 200 and 300. To one group of six persons he gave a case of liquor. The selection of the recipients was made by the petitioner and he gave more to some than others because of the larger business given him. Because of the personalized nature of the petitioner's relationship with his regular customers he had adopted the policy of sending a floral piece and of attending the funeral of his deceased customers when he learns of their death in time for him to do so. In sending such floral pieces he spent $51 in 1945 and $346.03 in 1946. The petitioner tries to keep the cost of each piece under $10. In 1945 and 1946 the petitioner expended $16.80 and $28.75, respectively for Christmas presents for the employees of the Bank of Seat Pleasant, consisting of about 10 persons, who were customers of his. In 1946 petitioner spent $32.50 for Christmas presents for the employees of Seat Pleasant Building and Loan Association, consisting of about six persons, who were customers of the petitioner. During 1945 the petitioner spent $130 in entertaining his service station employees at two different dinners. In 1945 and at a total cost of $10 the petitioner *194 gave one-year subscriptions to Field and Stream magazine to 10 of his customers who were interested in outdoor sports. During 1945 the petitioner paid $95.04 for 1,000 Christmas cards which he sent to his customers. In 1946 the petitioner expended $135 on a one-day trip to New York City on which he took as his guests three of his customers to attend an international sportsmen's show. One of the petitioner's hobbies is hunting. As he gets away from his business only once a year he usually arranges a hunting trip which constitutes his vacation. Since 1936 the petitioner has taken hunting trips each year to Separation Lake, Ontario, Canada, which is about 1450 miles from Washington, D.C. The petitioner never goes alone on such trips and beginning about 1942 and continuing through 1947 or 1948 he had each year as guests on his hunting trips George Curtis, Charles Bauserman, Bill Dumbaugh, L. A. Payne, and William McGrath. The petitioner has known these men since about 1925 or 1926 and all of them have been regular customers of his since he began business in 1932. In addition to the foregoing five customers the petitioner has as his guest on the 1946 trip another regular customer, *195 a Mr. Stembler. Each year the petitioner paid the entire charge for the camp and entertainment of the group while at Separation Lake. The petitioner also paid all of the expenses en route for those of the group who traveled in his automobile. Each member of the group was financially able to pay his own expenses on these trips and some, if not all, had offered to do so but petitioner considered that since he had invited them as his guests he should pay their expenses. The actual amount of the annual purchases from the petitioner by the abovenamed persons, or by the businesses with which some of them are associated, is not disclosed by the petitioner's records but the petitioner estimated that in the case of two of them the amount was $3,000 or $4,000 a year and in the case of the others the amount ranged from $1,000 to $2,000. In 1945 the rate of profits to sales in petitioner's business was approximately 6.5 per cent and in 1946 approximately 4.3 per cent. On the hunting trips taken by the petitioner to Ontario, Canada, in 1945 and 1946 he expended $750 and $1,475, respectively, with respect to himself and his guests. In 1946 the petitioner also took a hunting trip to New Brunswick, *196 Canada, on which he expended $400. On this trip he was accompanied by a Mr. George who was a representative of the American Oil Company whose products the petitioner sold exclusively. Mr. George had been instrumental in obtaining through that company many benefits that petitioner would not otherwise have been able to obtain. Issue (2) Opinion. On brief the respondent concedes the deductibility of the $95.04 expended for Christmas cards sent by petitioner to his customers. The remaining items are those representing expenditures for tickets to dinners of the Almas Temple, Northeast Businessmen's Association, and the Washington Board of Trade, Christmas presents for customers, including Seat Pleasant Bank employees and Seat Pleasant Building and Loan Association employees, entertainment for employees, flowers for the funerals of deceased customers, hunting trips to Canada, subscriptions to a sport magazine and a trip to the New York Sport Show. All of the above items had some connection with the operation of petitioner's business even though the connection in some instances was in no way comparable to the amounts involved. From his testimony, his appearance and demeanor on the *197 witness stand the petition was rather clearly an expansive person who personally prided himself on his liberal dispensation of largess. From that fact and the fact that in some instances the reasonably expected business returns were not at all in keeping with the amounts expended, we are unable to say that the full amounts of all the items in question were reasonable business expenses deductible under section 23 (a). On the contrary, the record and particularly the testimony of the witness and the impressions given while testifying indicate that the items were to a substantial extent personal and not business expenses. It is accordingly necessary, in the circumstances stated, for the Court to proceed as it was directed to do in Cohan v. Commissioner, 39 Fed. (2d) 540, and make some allowances but to bear heavily against the party, the petitioner in this instance, upon whom the burden rests to offer evidence sufficient to support his allegations. The item of $130 covering the entertainment of petitioner's employees, the $10 representing subscriptions to Field and Stream magazine, and the items covering Christmas presents for customers, we think may be regarded as being *198 sufficiently proven. Similarly, we have concluded that the expenditures for flowers for funerals of deacesed customers should likewise be allowed. The petitioner apparently regarded his course in sending flowers and of appearing at the funeral services of deceased customers as being good advertising among the relatives and friends of such deceased customers. While there might be some basis for applying the doctrine in the Cohan case to the expenditure for dinners by the organization above mentioned, it does appear that there was a considerable spreading of the dinner tickets among petitioner's more substantial customers and when the amount expended in the entertainment of each customer is taken into account the business value may well be within the amount of the expenditure made. We are accordingly allowing the deductions claimed for the dinner tickets. With respect to the hunting trips and the trip to the New York Sport Show, the picture presented not only fails to convince us that the expenditures were wholly related to petitioner's business but to the contrary it convinces us that the amounts expended are very substantially outside the realm of business expense. Not only has *199 the petitioner failed to show how the amounts in question were reasonably related to the operation of his business, but to the contrary, the facts which have been elicited tend to show that there was not anticipated benefit to his business which would be within reasonable proportion to the expenditures made and now claimed here as deductions. Applying the Cohan rule, we have concluded that of the amount expended for the hunting trips in 1945, $100 was related to the operation of the petitioner's business and of the amounts expended by petitioner in 1946, $200 was the amount reasonably related to the operation of his business. Issue (3) Facts as to deductions for losses. In his 1945 and 1946 income tax returns the petitioner deducted $318.45 and $354.57, respectively, as representing losses sustained in his service station business. In determining the deficiencies here involved the respondent disallowed $218.41 of the deduction taken in 1945 and the entire amount of that taken in 1946. In 1945 the petitioner cashed checks totaling $133.01 for customers which proved to be worthless. In 1946 he cashed a check for $76.84 for a customer which proved to be worthless. In October *200 1945 the petitioner's service station was broken into and $146.28 in cash was stolen. The station was again broken into in August 1946, when $144.53 in cash was stolen. No part of the foregoing amounts was ever recovered by the petitioner nor was he reimbursed by insurance or otherwise. During 1946 the petitioner expended $98.05 in repairing the damage to the canopy over the gasoline pumps at his service station caused by a customer's truck. Issue (3) Opinion. The petitioner alleges in his petition that the respondent erred in not allowing a deduction for 1945 for losses in the amount of $418.41 composed of $233.03 representing worthless checks cashed, and $188.38 representing losses from theft, and in not allowing in full the deduction - taken for 1946 in the amount of $354.57 composed of $76.84 representing a worthless check cashed, $179.84 representing losses from theft, and $98.05 representing damage to property. From the evidence submitted on this issue we have found as facts the items and amounts of the losses sustained by the petitioner with respect thereto in the respective years. On brief the respondent concedes the deductibility of such items and amounts. Since the *201 evidence fails to show any greater losses the petitioner's claims for larger deductions in the respective years are denied. Issue (4) Facts as to airplane hangar space, rental, and upkeep. The petitioner has a private airplane pilot's license and in 1945 owned a three-seat Cub Cruiser airplane. He kept the airplane at Hyde Field located at Clinton, Maryland, which is 19 miles from Washington. Printed on the body of the airplane in letters eight inches high were the words "Limericks for Service." There was no lettering or wording to indicate the type of service the petitioner rendered or what his address was. The petitioner was required to fly at an altitude of 1,000 feet when flying over Washington or any other area containing a substantial number of people. During 1945 the petitioner made some airplane flights over Washington and the surrounding area. On some occasions he took customers with him on such flights. In his 1945 income tax return the petitioner deducted $147.44 for rental of hangar space for the airplane and upkeep. The maintenance and operation of the plane were not part of or related to the operation of petitioner's business. Issue (4) Opinion. From the *202 evidence it is our conclusion that neither the maintenance nor the operation of petitioner's airplane was sufficiently related to petitioner's business to supply a basis for allowing the expenses therefor as business expenses and not personal expenses. Issue (5) Deduction for repairs and maintenance of equipment. In his 1946 income tax return the petitioner deducted $2,179.43 for repairs to and maintenance of his service station. In determining the deficiency for 1946 the respondent disallowed $1,740.87 of the deduction. In his petition the petitioner assigned error as to the disallowance alleging that during 1946 he expended the $1,740.87 for the purposes claimed. In support of the position thus taken the petitioner has submitted evidence showing 28 different expenditures totaling $1,599.97 made during 1946 for labor and materials used about his service station and other work done to and about the station. From the evidence submitted the greater part of the expenditures clearly appears to be for repairs and maintenance and consequently allowable deductions. Other expenditures appear, in whole or in part, to have been for replacements of or improvements to capital items and *203 consequently not deductible. On brief the respondent, without enumerating the various expenditures as to which concession is made, concedes the deductibility of $1,471.27 of the total of $1,599.97 respecting which the petition has submitted evidence. From the evidence submitted we are unable to find that the petitioner is entitled to any greater deduction under this issue than the amount conceded by the respondent. Accordingly, the contention of the petitioner for a deduction of $1,740.87 is denied to the extent it exceeds $1,471.27. Decision will be entered under Rule 50.